JAMES RUSSELL *v.* GLENN DOUTHITT.

[No. 772S100. Filed January 11, 1973.
Rehearing denied with opinion February 26, 1973.]

*Frederick J. McGrath,* South Bend, *Harold R. Berk,* Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

ARTERBURN. C.J.—This is an appeal from a denial of a judgment in a petition for a writ of habeas corpus filed in the Madison Circuit Court by the appellant, James Russell. James Russell was convicted of second degree burglary and sentenced to imprisonment of not less than two years nor more than five in the Indiana State Reformatory on September 11, 1969. Before the minimum of two years was up, namely on June 15 of 1971, he was paroled and signed a parole agreement containing certain conditions of parole, all of which are not made apparent in the record. He claims that his parole was illegally revoked without proper notice and hearing and without his having an opportunity to be represented by counsel. He bases his appeal primarily upon *Morrissey* v. *Brewer* (1972), 408 U.S. 47, 92 S. Ct. 2593, 33 L. Ed. 2d 484.

However, as stated in *Morrissey* v. *Brewer:*

"We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations. . . . Revocation deprives an individual not of the absolute liberty to which every citizen is entitled, but only of the

conditional liberty properly dependent on observance of special parole restrictions." *Id.*, 92 S. Ct. at 2600, 33 L. Ed. 2d at 494.

A brief review of Indiana law regarding parole and parole procedures is in order. The public policy of this State as expressed in IC 1971, 11-1-1-9 [*Burns' Ind. Stat. Ann.* § 13-1609 (1972 Supp.)] vests the parole board with almost absolute discretion in paroling convicts on terms and conditions thought advisable:

\* \* \*

"Before ordering the parole of any prisoner, the Indiana parole board shall have the prisoner appear before it, and shall interview him. A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered to be a reduction of sentence or pardon. A prisoner shall be placed on parole only when arrangements have been made for his proper employment, or for his maintenance and care, and only when the Indiana parole board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. *Every prisoner while on parole shall remain in the legal custody of the warden or superintendent of the institution from which he was paroled but shall be subject to the orders of the Indiana parole board.*

*The Indiana parole board may adopt such other rules not inconsistent with law as it may deem proper or necessary, with respect to the eligibility of prisoners for parole, the conduct of parole hearings, or conditions to be imposed upon parolees. Whenever an order for parole is issued it shall recite the conditions thereof.*" (emphasis added)

\* \* \*

It will be noted that all paroles are intended to be conditional. In the case before us, the appellant apparently signed an agreement reciting the conditions of his release and was fully cognizant of its implications and requirements.

Further, this Court has held that remaining at liberty under parole is not a "right" recognized by the Constitution. Instead, parole has been regarded as a "privilege" granted

by the grace and indulgence of the state government in the hope of achieving reformation:

> "This discretion of the board [parole board] is not subject to the supervision or control of the courts. It resembles that usually exercised by a board of pardons, or by the Governor of this State under the authority committed to him by the Constitution to grant reprieves, commutations of sentences, and pardons. The law confers upon the person imprisoned in the reformatory no absolute right of discharge under any circumstances until the maximum term of imprisonment prescribed as the punishment for the crime of which such inmate has been adjudged guilty has expired." *Terry* v. *Byers* (1903), 161 Ind. 360, 363, 68 N. E. 596, 597-98.

From what we can gather from rather a meager record in this case, a parole officer received a letter from Father Doyle recommending a mental examination of the appellant (then on parole) apparently because of Doyle's observations. The parole officer stated that the regular course of procedure in such matters was not to accept the letter as a fact, but rather, it put the officer on the alert to make a further investigation, which was done in this case.

On September 15, 1971, the appellant was arrested and taken to the St. Joseph County Jail. On September 22, he was returned to the Reformatory. A hearing was held on October 21 before the Parole Board. There was a decision to continue the matter for thirty days. A second hearing was held in the Reformatory on November 19.

The parole officer stated that the appellant was placed under arrest and returned to the state reformatory at the time indicated for the purpose of a psychiatric evaluation since there were no other facilities that could perform any evaluation or examination.

From the record in this case it appears that the parole board was confronted with charges and evidence that Russell, the appellant, had:

1. left the state without permission.

2. used Robitussin cough syrup which contains a narcotic drug and

3. associated with other men with records all in violation of the appellant's parole agreement. There is evidence to the effect that at the first hearing (October) he admitted the violations, but at the later hearing (November) referred to herein he denied the violations. The record does not disclose what witnesses were present other than the parole officer, or what evidence was introduced other than that the parole officer repeated at the habeas corpus proceeding regarding the admitted violations of the appellant at the first hearing.

In the *Morrissey* case relied upon by the appellant, the parole was revoked merely upon the statement of the parole officer to the parole board apparently without any hearing or opportunity of the parolee to appear and be heard. *Id.*, 92 S. Ct. at 2596-98, 33 L. Ed. 2d 489-91. In the case before us it is true that the appellant was arrested by a parole officer apparently with the belief that he should be brought in for the purpose of a psychiatric examination and treatment. It appears without question that the appellant was informed of the charges of parole violation being made against him at the time the psychiatric examination was being called for. Although the testimony is in conflict, the parole officer stated that the appellant admitted the violation at the first hearing. In this case the appellant had a second hearing before the full parole board with opportunity to explain or minimize the violations charged and his parole was finally revoked. *Morrissey* specifically states that a parole board is sufficiently detached and neutral in its viewpoint that it can hear and make a finding for a revocation of a parole. *Id.*, 92 S. Ct. at 2604, 33 L. Ed. 2d at 499. The major emphasis of the appellant here, however, is that he did not have an attorney, and an opportunity for cross-examination. The record does not show that he made such a request although the procedure outlined by the parole officer was that if any attorney desired to be heard that they permitted it, even though the

Rules of the parole board did not permit appearances of attorneys on either side at the hearing. RULE OF THE INDIANA PAROLE BOARD NO. 13 [*Burns' Adm. Rules & Regs. Ann.* (13-1609)-11 (1967)] *adopted pursuant to* IC 1971, 11-1-1-9 [*Burns' Ind. Stat. Ann.* § 13-1609 (1972 Supp.)]

The Indiana law gives an accused an attorney in a *criminal* proceeding. This the appellant had at the time of his original conviction. The hearing on revocation of his conditional parole is not a criminal proceeding, but is administrative in nature. The General Assembly of this State has vested almost complete discretion in the Indiana Parole Board to adopt rules and regulations for the conduct of its hearings pursuant to IC 1971, 11-1-1-9, [*Burns' Ind Stat. Ann.* § 13-1609 (1972 Supp.)] The *Morrissey* case expressly recognized the desirability of allowing a degree of informality and flexibility in parole procedures. The whole context of *Morrissey* is that these hearings are not to have the strict formality of a trial in a criminal case. It is there said:

"We have not thought to create an inflexible structure for parole revocation procedures. The few basic requirements set out above, which are applicable *to future revocations of parole,* should not impose a great burden on any State's parole system." (emphasis added) *Id.,* 92 S. Ct. at 2604, 33 L. Ed. at 499.

It will be noted that this case was apparently setting new standards which are applicable only "to future revocations of parole" and therefore, the standards set forth in *Morrissey* are not applicable in the case before us.

With reference to appellant's contention that he was entitled to an attorney at the parole board hearing, the United States Supreme Court in that case also stated:

"We do not reach or decide the question whether the parolee is entitled to the assistance of retained counsel or to appointed counsel if he is indigent." *Id.,* 92 S. Ct. at 2604, 33 L. Ed. 2d at 499.

The appellant cannot rely upon *Morrissey* in insisting upon his right to an attorney.

Because of the informality of a parole board hearing and the nature of the so-called "rights" involved and the policy of the state of Indiana to give almost absolute discretion to a parole board, we, as a court, should not attempt to change that policy. The appellant has failed to present any prejudicial error in the trial court's judgment.

The judgment is affirmed.

Givan, Hunter, JJ., concur; DeBruler, J., dissents with opinion in which Prentice, J., concurs.

## DISSENTING OPINION

DeBruler, J.—I dissent from the majority because the policy of the parole board which prevents a citizen from being represented by his counsel at a parole revocation hearing violates that citizen's rights to due process of law guaranteed to him by both the Federal and State Constitutions.

Recently the United States Supreme Court in *Morrissey* v. *Brewer* (1972), 92 S. Ct. 2593, 33 L. Ed. 2d 484, held that parole revocation hearings are the type of proceedings by which the individual may be condemned to suffer grievous loss and furthermore that the type of loss suffered is one within the contemplation of the "liberty or property" language of the Fourteenth Amendment. Therefore such hearings must be conducted pursuant to due process and certain procedural safeguards must be afforded to a parolee at his revocation hearing. The court, speaking through Chief Justice Burger, stated that the parolee must be given a preliminary hearing and further found that at his main hearing he should be afforded the opportunity to cross examine opposing witnesses, present his own witnesses, receive written notice of the claimed violation of parole, and have his hearing conducted before a neutral and detached hearing officer. Although the majority opinion specifically stated that it would not reach the

issue of the right to retain counsel at such hearings I believe that both previous decisions of the higher federal courts delineating basic Fourteenth Amendment due process procedures and the nature of the right itself indicate that the State cannot act to bar counsel from such a hearing.[1]

The main purpose of a parole revocation hearing is to establish the truth or falsity of certain allegations. Essentially it is a fact finding process concerned with whether a parolee committed certain specified acts which violate his parole agreement. Attorneys are often the keystone of fact finding hearings and represent the most meaningful and significant aspect of basic due process procedure. The right to cross examine and present evidence in rebuttal, as guaranteed by *Morrissey* v. *Brewer, supra,* would be of little help to one untrained in their use. Attorneys, on the other hand, are experienced and trained in the use of these tools to establish or discredit facts and allegations. They can be of immeasurable assistance in clearly delineating the issues confronting the parolee, in presenting factual contentions in an orderly manner, in conducting cross examination and in generally insuring the interest of the parolee. I can think of no legitimate State interest which would justify the exclusion of counsel from this type of hearing. Rather it seems to me that the integrity of this fact finding process would only be strengthened by the presence of trained counsel.

The prior decisions of the United States Supreme Court, and lower federal courts, when confronting this issue indicate that the right to retain counsel is an integral part of the procedural requirements of due process as defined by the Fourteenth Amendment to the Federal Constitution. Due process, essentially, is the opportunity to be heard. *Wisconsin* v.

---

1. After stating that they would not decide the question whether or not a parolee is entitled to the assistance of counsel at his revocation hearing the Court cited in a footnote the Model Penal Code § 305.16 which reads: "The institutional parole staff shall render reasonable aid to the parolee in preparation for the hearing and he shall be permitted to advise with his own legal counsel. . . ."

*Constantineau* (1971), 400 U.S. 433, 91 S. Ct. 507, 27 L. Ed. 2d 515; *Grannis* v. *Ordean* (1914), 234 U.S. 385, 34 S. Ct. 779, 58 L. Ed. 1363. All the procedural requirements incorporated into a due process hearing are tools to insure that this opportunity is afforded in a "meaningful manner". *Armstrong* v. *Manzo* (1965), 380 U.S. 545, 85 S. Ct. 1187, 14 L. Ed. 2d 62. As Justice Sutherland wrote in reference to the right to be represented:

> "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." *Powell* v. *Alabama* (1932), 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158.

Although the court in *Powell* was writing in reference to the Sixth Amendment and not in the context of Fourteenth Amendment due process proceedings with which we are concerned here, the rationale of the observation prevails. The right to be represented by counsel is an important aspect of being heard in a meaningful manner, regardless of whether the proceeding is deemed criminal or non-criminal in nature. The United States Supreme Court, citing the rationale of the *Powell* decision above, has found that due process requires that counsel be allowed to represent a welfare recipient in an administrative hearing concerned with the termination of welfare benefits. *Goldberg* v. *Kelly* (1970), 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287. The United States Court of Appeals of the Seventh Circuit also included the right to be represented by counsel in its outline of Fourteenth Amendment due process requirements in reference to a probation revocation hearing. *Gunsolus* v. *Gagnon,* 454 F. 2d 416 (7th Cir. 1971). It seems apparent to me, therefore, that federal decisions delineating due process requirements include the right to retain counsel in those proceedings which necessitate a due process approach, and since the proceedings with which we are concerned here have been clearly held to require such an approach counsel should not be excluded from the hearings.

Furthermore the Constitution of this State at Article 1, § 12, contains a due course of law section comparable to the due process provision of the Fourteenth Amendment. Although parole revocation hearings are not strictly speaking an administrative proceeding the Appellate Court treatment of a similar situation in the context of Art. 1, § 12, is significant here. In a case dealing with hearings for unemployment compensation benefits the Appellate Court held that the exclusion of claimant's counsel was a denial of due process. *Hamm* v. *Review Board* (1961), 132 Ind. App. 318, 177 N. E. 2d 337. The Court stated in its opinion:

> "We do not deem it necessary to cite authority that the due process of law provisions in both constitutions apply equally to administrative boards, the same as the courts of law, and that the appellant herein has a right to be represented by counsel in this matter before the appeals referee, and at every stage of proceeding."

It seems to me that the reasoning quoted in the *Hamm* case above applies even more strongly to our case here. The loss to be suffered by a revocation of parole is certainly as great, if not greater than that suffered by denial of unemployment benefits.[2] A constitutional provision which would prohibit a counsel from a proceeding where one's economic welfare is at stake would surely even more strongly condemn the exclusion of counsel where one's liberty is at stake.

The majority opinion citation of *Terry* v. *Byers* (1903), 161 Ind. 360, 68 N. E. 596, is particularly inappropriate to this case. The *Terry* decision concerned not a parole revocation proceeding as we are faced with here, but rather a parole granting proceeding. There are recognized differences in the nature and concept behind these two types of hearings. A

---

2. It is also of note that the Legislature has deemed a right to have counsel present at all administrative adjudication so important that it has incorporated this right into a statute. See I.C. 1971, 4-22-1-22, being Burns § 63-3022. It has also provided that students faced with expulsion from school have the right to a hearing with the assistance of counsel if so desired. See I.C. 1971, 20-8-9.5-11, being Burns § 28-5364.

parole revocation hearing, as pointed out above, is essentially a fact finding hearing, but a parole granting hearing contemplates a more substantial degree of discretion and judgment on the part of the parole board which is not based particularly upon either establishing or discrediting certain facts. It should be pointed out also that the United States Supreme Court has specifically said that parole revocation proceedings must be conducted pursuant to certain procedural rights guaranteed by the Fourteenth Amendment Due Process Clause, however, that court has not as yet extended those rights under the Fourteenth Amendment to a parole granting hearing.

The majority also cites sections of Indiana statutory law which grant to the parole board a certain amount of discretion in its proceedings. This statute (I.C. 1971, 11-1-1-9, being Burns § 13-1609) again deals mostly with the granting of paroles rather than the case at bar which concerns revocation. In any event it is elementary constitutional law that when the United States Supreme Court has decided that certain procedural rights guaranteed by the Fourteenth Amendment Due Process Clause must be afforded in a proceeding then the statutes of the state must conform to that constitutional mandate. Thus the discretion which is allowed to be exercised by the Indiana Parole Board must be bounded by the procedural rights guaranteed by the Constitution of the United States.

Lastly this case does not pose the question as to whether or not the *Morrissey* decision is retroactive as the majority opinion seems to assume, but rather presents the issue of whether or not, given the fact that the Supreme Court has found that parole revocation proceedings should be conducted with certain procedural due process rights, the State can continue to exclude counsel from those proceedings. I believe that the answer is apparent and in the negative. I would hold therefore that the exclusion of counsel from parole revocation hearings deprives the parolee of due process of

law under both Federal and State Constitutions and that if a parolee chooses to retain counsel at such a hearing he should be allowed to do so.

Prentice, J., concurs.

NOTE.—Reported in 291 N. E. 2d 361.

## ON PETITION FOR REHEARING

ARTERBURN, C.J.—Appellant raises a number of questions on Petition for Rehearing which are merely a reiteration of issues we originally considered. However, he does point to an error in our statement that he did not request counsel at the parole revocation hearing. The record shows he did.

However, the whole tenor of our opinion discussed and considered the right to counsel at a parole revocation hearing including the statement of the United States Supreme Court on that question. (See original opinion.)

For the reason stated the Petition for Rehearing is denied.

Givan, Hunter, JJ., concur; DeBruler, Prentice, JJ., vote to grant.